# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY.

FEBRUARY TERM, 1905.

---

WILLIAM J. MAGIE, ORDINARY.
JAMES J. BERGEN, VICE-ORDINARY.

---

LAWRENCE A. VAN RIPER, appellant,

*v.*

JANE E. VAN RIPER et al., respondents.

[Submitted July 12th, 1904. Decided November 14th, 1904.]

1. Evidence of testator's widow and son, who caveated against the probate of testator's will, that at the time of executing the will testator had become weakened by age and disease, and at times lacked the degree of mental force previously possessed by him, was insufficient to overcome proof showing testamentary capacity given by those present when the will was signed and by the testamentary witnesses.

463

2. Where testator during his life had managed his own business, accumulating an estate of considerable value, and, though he had been ill for nearly a month, went to the office of his attorney and there consulted concerning a will which had been drawn for him in accordance with previous instructions, after which the will was executed in the presence of witnesses, who testified to testator's capacity, evidence of his physician that testator was erratic and impulsive, and at some times more rational than at others, but at no time was he capable of any really consecutive, methodical thought or arrangement, but went by fits and starts in all his business, was insufficient to rebut such proof of capacity.

On appeal from Bergen county orphans court from a decree admitting a will to probate.

*Mr. Robert E. Van Hovenberg* and *Mr. Michael Dunn,* for the appellant.

*Mr. William B. Gourley,* for the respondents.

MAGIE, ORDINARY.

This appeal seeks a reversal of a decree of the Bergen county orphans court admitting to probate a paper-writing as the last will and testament of Hartman Van Riper, deceased, and issuing letters testamentary thereon. The sole ground presented by the argument in this court for the reversal of the decree is that the testator did not possess testamentary capacity at the time he executed the paper in question. The decided weight of evidence is that instructions for the drawing of a last will and testament were given by testator prior to November, 1902, and that a draft of a will in accordance with such instructions was made and discussed by testator with his legal adviser, who made the draft, and Mr. George S. Hilton, whom the testator had selected to be one of the executors and trustees. At the discussion the terms of the will were definitely settled, with the exception of some details in respect to the street numbers of properties intended to be disposed of. On the 3d of November, 1902, testator became ill, and continued to be so at least until November 21st. He was not, however, confined to the house for the whole period, but did go out, although contrary to the advice of his physician.

On the 20th of November he came to the office of his legal adviser, who had made a typewritten will upon the lines of the draft copy previously discussed and considered. They went to the office of Mr. Hilton, where the typewritten copy was read to him, and he expressed his satisfaction with its provisions. It was then executed in the precise manner required by the statute.

Upon the contention made, it is obvious that the question is as to the testamentary capacity on November 20th, 1902. The evidence of those who were present at the interview at Mr. Hilton's office and of the testamentary witnesses affords proof of the possession of testamentary capacity by the deceased, according to the doctrines settled in this state upon that subject. The claim is that there is sufficient proof to overcome the weight of that evidence. Reliance is placed upon evidence given by his widow and by his son, who caveated against the probate. At the most, this evidence showed that the testator had become weakened by age and disease, and at times had lacked the degree of mental force previously possessed by him. Such evidence, however, is insufficient to overcome the testimony above alluded to in respect to the condition of deceased at the time of the execution of the will. Reliance is further placed by the appellant upon the testimony of the physician who attended him during the sickness between November 3d and November 21st, 1902. The gist of that evidence, in my judgment, is expressed in the answer to the following question:

"During that time that you were visiting him from November 3d to November 21st, was he, in your judgment, in such a condition of mind that he could rationally and intelligently and understandingly dispose of a large estate, consisting of different pieces of property, bonds and mortgages, and other securities, among different persons, who were his relatives?"

To which question the following answer was made:

"His condition during all that period was very much as I have seen him in other times. He was erratic and impulsive, and sometimes more rational than others; but at no time was Mr. Van Riper capable of any really consecutive, methodical thought and arrangement. He went by fits and starts in all his business, I understand."

The opinion of this witness as to his capacity, if designed to be applicable only to the period between November 3d and November 21st, is so opposed to evidence of his condition and conduct on November 20th, to which I have alluded, as not to impress me with the conviction that the deceased lacked capacity to understand and to intelligently declare his intentions respecting the disposition of his property on November 20th, which intentions had been embodied in previous instructions and contained in the previous draft made and discussed some time previous to November 3d. If the witness designed his opinion to apply to deceased during the period of his whole life, it is opposed to a great weight of evidence and the fact that deceased by his management of his own business had accumulated an estate of considerable value.

I have reviewed the evidence with care and am compelled to the conclusion that the court below was required thereby to admit the will to probate. The decree will therefore be affirmed.